Filed 2/7/22  P. v. Peraza CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHNNIE RAY PERAZA,<br><br>Defendant and Appellant. | C092159<br><br>(Super. Ct. Nos.<br>STK-CR-FE-1998-0008639,<br>SF074536B) |

Defendant Johnnie Ray Peraza appeals the trial court's denial of his second petition for resentencing under Penal Code section 1170.95, enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).[1]  He contends:  (1) the summary denial of his first petition did not bar him from filing a

---

[1]  Undesignated statutory references are to the Penal Code.

1

second petition, and (2) the trial court erred by summarily denying his petition without appointing counsel or holding an evidentiary hearing. The People argue defendant was collaterally estopped from filing the second petition and the trial court correctly determined he was ineligible for relief, as a matter of law. Defendant also contends that in resentencing on remand from an earlier appeal, the trial court imposed an unauthorized sentence and failed to update his custody credits.

We accept the People's concession that the matter must be remanded for resentencing based on an unauthorized sentence and to update defendant's custody credits. We will affirm the order denying the section 1170.95 petition and remand the matter to the trial court to correct the unauthorized sentence regarding minimum parole eligibility and to update defendant's custody credits.

BACKGROUND

A       *Murder convictions*

A summary of the relevant facts and procedural background are taken from our prior appellate opinion. (*People v. Peraza* (Feb. 4, 2005, C037039) [nonpub. portion].)[2]

Early one morning, after going to Ronny Giminez's apartment and shooting at him, defendant and his codefendant Elisio Valdez went to Andrea Mestas's apartment and asked to use the telephone, but Mestas said, "No, Elisio, no." Valdez then shot Mestas twice in the chest at close range, killing her. Mestas was pregnant with a 16-to-17-week-old fetus, which also died as a result of Mestas's death. Valdez and defendant then returned to Giminez's apartment and fired several gunshots into the apartment as they drove by. Approximately an hour and a half later, defendant went to his girlfriend N.D.'s apartment, forced his way in, and held her and her children hostage at gunpoint.

---

[2]      On the court's own motion, we take judicial notice of our opinion in case No. C037039. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

2

The prosecutor argued that defendant and Valdez had gone to Mestas's apartment to kill her boyfriend, D.O., on orders from their gang. The prosecutor also presented evidence the gang considered Mestas a "rat" and a "snitch." Mestas's daughter, who was in the home, testified Valdez was the shooter. A witness testified defendant had later indicated that he was the shooter. In any event, Mestas was shot with defendant's gun.

A jury found defendant and Valdez guilty of various crimes, including the murders of Mestas and her fetus (§ 187), premeditated attempted murder of Giminez (§§ 664, 187), as well as aggravated assault (§ 245, subd. (a)(2)) and false imprisonment (§ 236) of N.D. The jury also found true a multiple-murder special-circumstance allegation (§ 190.2, subd. (a)(3)). The trial court sentenced defendant to multiple life sentences, plus a determinate term of 14 years in prison.

Defendant appealed, raising a number of claims, including, as relevant here, two claims of instructional error. Defendant claimed the court misinstructed the jury with CALJIC No. 3.02, by not including a target offense in its natural and probable consequences instruction, and with CALJIC No. 8.80.1, by including language about reckless indifference to human life.

Under CALJIC No. 3.02, the court instructed the jury that it could find defendant guilty of the two murders and specific other offenses if it found he aided and abetted in the commission of another offense (i.e., a target crime) and the charged crimes were a "natural and probable consequence of the commission of the target crime." But, the court did not identify any target crimes for the jury, which we concluded was error. In finding this error was not prejudicial, we relied on the fact that no one argued a natural and probable consequences theory to the jury. We also rejected defendant's claim the jury could have relied on any of the other crimes charged against him or uncharged crimes, because defendant did not provide any meaningful analysis of how the jury could have misapplied the instruction. Specifically, defendant did not explain how the jury could have used any of the charged offenses as potential target offenses as they occurred after

3

the murder, and defendant did not identify an uncharged target offense or any evidence he aided and abetted any such uncharged offense.

The court also instructed the jury with CALJIC No. 8.80.1 as to the special-circumstance allegation. That instruction stated: "If you find that a defendant was not the actual killer of a human being or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided and abetted or assisted any actor in the commission of the murder in the first degree."[3] The clerk's transcript included two versions of the instruction; one erroneously included additional language allowing a conviction if the jury found defendant acted "with reckless indifference to human life and as a major participant." This is bracketed language included in the instruction when a felony-murder special circumstance is alleged under section 190.2, subdivision (a)(17) (CALJIC No. 8.80.1), a circumstance not alleged in this case. We concluded the jury was not, in fact, instructed with the inapplicable portion of the instruction, but only with the correct portion. The correct instruction as given required that to find the special-circumstance allegation true, the jury had to find defendant was either the actual killer or aided and abetted the crime with the intent to kill. Accordingly, we concluded defendant had not established instructional error. The correct instruction was given, and it required the jury to find defendant was the actual killer or aided and abetted or assisted the actual killer with intent to kill.

We affirmed the convictions and directed the trial court to modify the sentence.

---

**3** Our record on appeal does not include the instructions as given. This statement is taken from the trial court's order. No one disputes the accuracy of this text.

4

B. *First 1170.95 petition*

In January 2019, defendant filed a section 1170.95 petition for resentencing. Defendant checked various boxes on the form petition alleging that a "complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;]" that "[a]t trial [he] was convicted of 1st . . . degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine[;]" and that he "could not now be convicted of 1st . . . degree murder because of changes made to [sections] 188 and 189, effective January 1, 2019." Defendant's form petition also checked boxes alleging he was "convicted of 1st . . . degree murder and that [he] could not now be convicted of murder given changes to [section] 189, effective January 1, 2019," because he "was not the actual killer[;]" he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree[;]" and he "was not a major participant in the felony [nor] did [he] act with reckless indifference to human life . . . ." He requested that counsel be appointed to represent him on the petition.

Without appointing counsel or getting briefing, the trial court reviewed the petition and the record of conviction, including our earlier opinion, and determined defendant was ineligible for resentencing as a matter of law. This determination was based on the fact that the jury found true the multiple-murder special circumstance. The trial court concluded that to find defendant guilty of this special circumstance, the jury must have found either he was the actual killer or aided and abetted the actual killer with intent to kill, both of which would render him ineligible as a matter of law for resentencing. Defendant did not appeal the denial of this petition.

C. *Second 1170.95 petition*

In February 2020, defendant filed another 1170.95 petition for resentencing. In this petition, defendant related the background facts of his conviction, alleged he was

5

eligible for resentencing as he had been charged and convicted under the natural and probable consequences doctrine, and could not now be convicted of the murder of Mestas based on the changes to sections 188 and 189. Specifically, he contended the murder of Mestas was a natural and probable consequence of "uncharged target offenses relating to the original intent to murder Mestas's live-in boyfriend, [D.O.]" He also averred under *People v. Chiu* (2014) 59 Cal.4th 155 that he could not be convicted of first degree murder as an aider and abettor under the natural and probable consequences doctrine. Defendant requested appointment of counsel.

Without appointing counsel, the trial court denied the petition, noting it had denied defendant's previous petition on the grounds defendant could not make a prima facie showing of eligibility as a matter of law. This is the order from which defendant appealed.

## DISCUSSION

## I

Defendant contends the trial court erred in summarily denying his section 1170.95 petition. He argues he was not barred from filing a second petition, as the first was denied without prejudice and was not a determination on the merits in compliance with due process. Defendant goes on to argue the trial court erred in summarily denying his petition, as he made a prima facie showing he was entitled to relief. Defendant contends the second denial could be "construed as incorporating by reference the reasons given for the first dismissal." He then argues the trial court engaged in premature factfinding, the denial was unsupported by "proper evidence," and he was entitled to appointment of counsel.

The People argue defendant is procedurally barred from filing successive section 1170.95 petitions under collateral estoppel principles. The People also argue the court was entitled to rely on the record of conviction, defendant was not entitled to

6

appointment of counsel, and that the record demonstrates defendant was ineligible for relief as a matter of law.

A.   *Legal background*

Senate Bill 1437 was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f).) The bill amended section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability. (Stats. 2018, ch. 1015, §§ 2, 3.) It also added new section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.)

Senate Bill 1437 changed section 188's definition of malice for the crime of murder. Under new section 188, subdivision (a)(3), "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." It thus "eliminated natural and probable consequences liability for murder and limited the scope of the felony-murder rule." (Stats. 2018, ch. 1015, § 2.)

Section 189 was amended to include new subdivision (e), which provides: "(e) A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer[;] [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[; or] [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

7

Section 1170.95, former subdivision (a) allowed those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial . . . . [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (Stats. 2018, ch. 1015, § 4.)

After briefing was completed in this case, the California Supreme Court issued its opinion in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) and the Governor approved Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775), amending section 1170.95, effective January 1, 2022. (Stats. 2021, ch. 551.) The statute applies to acts predating its enactment as either an ameliorative statute under *In re Estrada* (1965) 63 Cal.2d 740, 748, or a clarification of law. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243; *People v. Lee* (2018) 24 Cal.App.5th 50, 57.) In either case, defendant is entitled to the benefit of the new provisions to section 1170.95.

Senate Bill 775 amended section 1170.95 to clarify that a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1170.95, subd. (a).)

Senate Bill 775 also amended section 1170.95 to codify the holding in *Lewis* that a petitioner has the right to appointment of counsel, if requested, prior to the court making

8

the prima facie finding.  (Cal. Const., art. IV, § 8; Stats. 2021, ch. 551, § 1(b); § 1170.95, subd. (b)(3); *Lewis, supra*, 11 Cal.5th at pp. 960-962, 966.)

In addition, Senate Bill 775 added requirements to the process for evaluating a petitioner's prima facie eligibility for relief:  after the parties have had the opportunity to submit briefing, the trial court must hold a prima facie hearing[4] to determine whether the petitioner has made a prima facie case for relief; and, if the trial court declines to issue an order to show cause, it must provide a statement fully setting forth its reasons for doing so.  (§ 1170.95, subd. (c).)

*Lewis* also held that once the court has appointed counsel and received briefing from the parties, it may rely on the record of conviction in determining whether that single prima facie showing has been made, including a prior appellate court opinion. (*Lewis, supra*, 11 Cal.5th at pp. 970-972.)  Because the prima facie inquiry under subdivision (c) of section 1170.95 is limited at this preliminary juncture, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).)

Although a court should not reject a petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing (*Lewis, supra*, 11 Cal.5th at p. 971), the court need not credit factual assertions that are untrue as a matter of law.

---

[4]    The statute does not indicate that this prima facie hearing under section 1170.95, subdivision (c) is an evidentiary hearing.  Indeed, because the prima facie determination should not involve factfinding involving the weighing of evidence, it would make little sense for the prima facie hearing to be an evidentiary hearing.  In contrast, the statute explicitly indicates the hearing after the issuance of the order to show cause, as described in section 1170.95, subdivision (d)(3), is an evidentiary hearing:  that section addresses the evidence the trial court may consider at the hearing, the standards governing admission of evidence at the hearing, and states the parties are entitled to present new or additional evidence at the hearing.

(*Drayton, supra*, 47 Cal.App.5th at p. 980.)  Thus, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, at p. 971; *Drayton*, at p. 979.)

B.    *Analysis*

Because we will conclude the second petition was properly denied, for purposes of this appeal we will assume without deciding that defendant was permitted to file the second petition.[5]

---

[5]    Although we do not resolve the issue of whether the second petition was barred by collateral estoppel principles, defendant's assertion that the first petition was not denied on the merits is at odds with the substance of the court's order.  The order did not indicate the petition was denied for failure to meet section 1170.95, subdivision (b)'s pleading requirements.  Rather, the order went through in detail the underlying convictions, the necessary jury findings, and the reason defendant was not entitled to relief as a matter of law; that is, it was denied under section 1170.95, subdivision (c) on the grounds that defendant had not made a prima facie showing he was entitled to relief.  Section 1170.95, subdivision (c) does not explicitly address whether the denial of a petition on the merits is with prejudice and whether successive petitions are barred.  However, as the People note, section 1170.95, subdivision (b)(2) provides that a denial of a petition for failing to meet pleading requirements is without prejudice.  By contrast, a denial on the merits under section 1170.95, subdivision (c) has no such language.  This suggests a denial on the merits is with prejudice, barring successive petitions.

Furthermore, although the parties have not cited, and we have not independently found, any authorities addressing the propriety of successive section 1170.95 petitions, there is such authority in the context of successive habeas petitions.  In short, the rule as to habeas petitions is that absent some change in law or facts, not present between these two petitions, the court will not consider repeated petitions presenting claims previously rejected, nor will the court consider new grounds for relief which were known to petitioner at the time of the prior petition.  That is, a defendant cannot present his contentions on a piecemeal basis.  Such successive petitions waste scarce judicial resources and undermine the finality of judgments.  (*In re Reno* (2012) 55 Cal.4th 428, 460, 497, superseded by statute on other grounds in *In re Friend* (2021) 11 Cal.5th 720, 745.)  Given that in *Lewis*, our Supreme Court indicated the prima facie determination in habeas petitions is analogous to that in 1170.95 petitions (*Lewis, supra*, 11 Cal.5th at pp.

10

*Lewis* and Senate Bill 775 provide the analytical framework for resolving defendant's claims. It is now clear "that petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition (see § 1170.95, subds. (b), (c)) and that only after the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' (§ 1170.95, subd. (c).)" (*Lewis, supra*, 11 Cal.5th at p. 957, italics omitted.) The People make no claim defendant did not file "a facially sufficient petition" under section 1170.95, subdivision (a). Accordingly, defendant was entitled to the appointment of counsel before the trial court could consider the record of conviction to determine his entitlement to relief. The failure to appoint counsel upon defendant's request was error. In addition, defendant was entitled to a prima facie hearing and a statement of reasons for declining to issue the order to show cause. (§ 1170.95, subd. (c), as amended by Stats. 2021, ch. 551, § 2.)

Initially, we note, as defendant did in his opening brief, the trial court provided a statement of reasons for denying the first petition. The order detailed the underlying convictions, the necessary jury findings, and the reason defendant was not entitled to relief as a matter of law. In the procedural posture of this case, this statement of reasons satisfied the new statutory requirement and serves as a statement of reasons given for declining to issue the order to show cause.

We review the error in the failure to appoint counsel under the *People v. Watson* (1956) 46 Cal.2d 818 standard. (*Lewis, supra*, 11 Cal.5th at p. 973.)[6] Because the right to counsel, to submit briefing, and to a hearing at the prima facie stage of the proceedings

---

971, 973), it seems reasonable that that analogy would extend to include a rule barring successive petitions.

[6] Defendant does not explicitly argue the *Watson* standard, but argues the error was prejudicial "under any standard."

11

are connected in the statute and implicate error only under state law, the same standard of prejudice applies to the denial of these rights.  Defendant "must therefore 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.' " (*Id*. at p. 974.)  That is, defendant has the burden of showing it is reasonably probable that if counsel had been appointed, he had been permitted to file briefing, and a hearing had been conducted, his petition would not have been summarily denied without an evidentiary hearing following issuance of an order to show cause. (*Ibid*.)  Defendant has not met this burden.

The jury was instructed with CALJIC No. 8.80.1 that to find defendant guilty of the multiple-murder special circumstance, it had to find defendant was either the actual killer or aided and abetted with intent to kill.  Defendant argues the trial court's reliance on the giving of this instruction to find him ineligible as a matter of law was prejudicial, as CALJIC No. 8.80.1 did not require the jury to find defendant aided and abetted with the intent to kill Mestas.  Rather, it could have found defendant had the intent to kill D.O., and because the instruction permitted the jury to find defendant "assisted" Valdez with intent to kill D.O., the jury could have found the killing of Mestas was a natural and probable consequence of the intent to kill D.O.  And, therefore, the jury did not have to find defendant had the intent to kill Mestas.  This argument merges two separate doctrines, transferred intent and natural and probable consequences, and relies on the false premise that the intent to kill must be specific to the person killed.[7]

---

[7]    Our Supreme Court has repeatedly endorsed the view "that, for murder, the 'intent to kill need not be directed at a specific person . . . .' ([*People v.*] *Bland* [(2002)] 28 Cal.4th [313,] 323.)  'The social harm of murder is the "killing of a human being by another human being."  The requisite intent, therefore, is the intent to kill a, not a specific, human being.' (Dressler, Understanding Criminal Law (4th ed. 2006) § 10.04[b], p. 133; see also *People v. Scott*[ (1996) 14 Cal.4th 544,] 554-556 (conc. opn. of Mosk, J.) [citing an earlier edition of this treatise].)" (*People v. Stone* (2009) 46 Cal.4th 131, 139, italics omitted.)  We therefore agree with the authorities holding the

Part of the legislative intent animating Senate Bill 1437, as indicated in the uncodified statutory findings and declarations, was to ensure that punishment was commensurate with an individual's culpability and premised upon that individual's "own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1(g); *People v. Alaybue* (2020) 51 Cal.App.5th 207, 213.) The Legislature recognized a need to "more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1(b), see *id.* § 1(d).) Imposing liability on an individual who actually intends a homicide does not implicate these concerns or run afoul of these purposes. In this situation, the individual has the mens rea and culpability for murder and punishment for murder is commensurate with that culpability.

Having been properly instructed with CALJIC No. 8.80.1, the jury found the multiple-murder special circumstance true. This necessarily means the jury found defendant was either the actual killer or aided and abetted the actual killer with intent to kill. By finding this special-circumstance allegation true, the jury made precisely the same finding it would be required to make to convict defendant of multiple murders under the new law. Because a defendant with a multiple-murder special circumstance could still be convicted of murder, he is ineligible as a matter of law to have his murder conviction vacated.

Section 1170.95 expressly limits evidentiary hearings to circumstances in which a petitioner can demonstrate they "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).) Because the multiple-murder special-circumstance finding

---

multiple-murder special-circumstance finding does not require that the intent to kill be the intent to kill the ultimate victim. (*People v. Arreola* (1986) 186 Cal.App.3d 1570, 1576, cited with approval in *People v. Shabazz* (2006) 38 Cal.4th 55, 64 [gang-murder special circumstance not limited only to murders where intended victim was killed].) In this situation, " 'the defendant is deemed as culpable as if he had accomplished what he set out to do.' " (*People v. Bland* (2002) 28 Cal.4th 313, 321.)

13

remains valid and binding, defendant could still be convicted of first degree murder despite the changes to sections 188 and 189; it is not reasonably probable that if the trial court had appointed counsel, permitted briefing, and held a prima facie hearing, his petition would not have been denied.

## II

Defendant also contends the trial court imposed an unauthorized sentence as to the gang enhancement by imposing the 15-year minimum parole eligibility term on count 1, the murder of Mestas, based on the imposition of a life without possibility of parole sentence. The People agree. Defendant also contends, and the People concede, that the court failed to update defendant's custody credits when it modified his sentence following our remand. The People agree remand is appropriate to allow the court to update defendant's custody credits.

On appeal from the convictions, we accepted the People's concession that the trial court erred in imposing gang enhancements under section 186.22, subdivision (b)(1). We ordered the judgment modified to strike the gang enhancements on the murder and attempted murder convictions and ordered the court to impose 15-year minimum parole eligibility terms instead. We also struck the trial court's award of presentence custody credits. In 2005, the trial court resentenced defendant ex parte and did not make the corrections to the sentence as directed.

In 2014, the trial court ordered the 2005 order set aside. The trial court modified the judgment and imposed a 15-year minimum parole eligibility period as to each conviction: the murder of Mestas (count 1), the murder of Mestas's fetus (count 2), and the attempted murder of Giminez (count 4). In count 1, defendant was sentenced to life without the possibility of parole; in count 2 defendant was sentenced to 15 years to life; and in count 4 defendant was sentenced to life with the possibility of parole. The trial court also stated defendant was to serve a term of 27 years to life (15 years to life, plus 12

14

determinate years), plus life with the possibility of parole after a minimum 45-year parole eligibility date, plus life without possibility of parole.

The gang enhancement does not apply to those sentenced to a term of life without the possibility of parole. (*People v. Lopez* (2005) 34 Cal.4th 1002, 1010.) But on a sentence of life with the possibility of parole, the trial court must impose a 15-year minimum parole eligibility period. (§ 186.22, subd. (b)(5); *Lopez, supra*, at pp. 1010-1011.) Despite the fact that a 15-year minimum parole eligibility period is subsumed in the 15-year-to-life sentence, and will have little practical effect, it must be imposed. (*Lopez*, at p. 1009; *People v. Harper* (2003) 109 Cal.App.4th 520, 527.)

As the parties agree, the trial court could properly impose the 15-year minimum parole eligibility period on count 2 and count 4, terms of 15 years to life and life with possibility of parole, respectively. The parties also agree the proper aggregate sentence is 42 years to life, plus life without the possibility of parole. The 42-year-to-life term is calculated by adding the 15-year-to-life term of count 2 (with the 15-year minimum parole eligibility subsumed) to the life with possibility of parole on count 4, with a minimum parole eligibility period of 15 years, plus the 12-year determinate term. We direct the trial court to correct the sentence imposed.

The parties also agree the matter must be remanded to allow the trial court to recalculate defendant's custody credits. When a sentence is modified while defendant is serving the sentence, the trial court must update defendant's actual custody credits up to that point. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 37.)

## DISPOSITION

The order denying the section 1170.95 petition is affirmed. The matter is remanded to the trial court to correct the unauthorized sentence regarding minimum

parole eligibility and to update defendant's custody credits.  In all other respects, the judgment is affirmed.

KRAUSE

                                                                                     KRAUSE              , J.

We concur:

RAYE                  , P. J.

MAURO               , J.